## Dagostino *v.* Rogers, Appellant.

*Corporations—Mining companies—Operation of company's store —Injury to business of neighboring store—Contract—Master and servant.*

Where a company or partnership operating a coke works conducts a store for the sale of general merchandise, it will not be liable in damages for injury to the business of the owner of a neighboring store, where there is no evidence that the company maliciously intended to injure the owner of the other store, or to drive him out of business, and the only testimony on the subject shows that the company's superintendent told some of the com-

pany's employees that they should and must patronize the company's store if they desired ? continue in their employment.

There is no legal prohibition which forbids a company or partnership from making it a condition of employment that its employees shall patronize a store which it had provided for the use of its workmen. The exercise of such a right does not become wrongful because it incidentally interferes with the business of another storekeeper.

Argued April 16, 1917. Appeal, No. 33, April T., 1917, by defendants, from judgment of C. P. Fayette Co., June T., 1914, No. 421, on verdict for plaintiff in case of Alphonso Dagostino v. Grace Rainey Rogers et al. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover damages for injuries to plaintiff's store alleged to have been caused by the operation of a company store. Before UMBEL, P. J.

At the trial the plaintiff offered no proof of malice but did show that the defendants' superintendent had told some of the defendants' employees that they should and must patronize the company's store if they desired to continue in their employment.

The court charged in part as follows:

The primary question for your determination is as to whether or not the defendants, through their superintendent, did such acts, by influencing their workmen improperly and directing that they quit dealing with the plaintiff, and that as a consequence the plaintiff sustained injury; if you find that to be the fact then your verdict should be for the plaintiff for whatever amount of loss you find he sustained during the four months that have been testified to by the plaintiff and the other witnesses.

Verdict for plaintiff for $800, on which judgment was entered for $180.93, the reduction having been made by

286    DAGOSTINO *v.* ROGERS, Appellant.

Assignment of Errors—Opinion of the Court. [68 Pa. Superior Ct.

the court because no damages over the latter sum were shown. Defendant appealed.

*Errors assigned* were above instructions and in submitting the case to the jury.

*E. C. Higbee,* of *Sterling, Higbee & Matthews,* with him *J. G. Carroll,* for appellants.—The acts committed by the defendants as disclosed by the evidence are lawful: Com. v. Clark, 14 Pa. Superior Ct. 435; Adair v. U. S., 208 U. S. 161; Coppage v. State of Kansas, 236 U. S. 1.

The acts of the defendants being lawful, they did not constitute a right of action in plaintiff: Penna. R. R. Co. v. Marchant, 119 Pa. 541.

*David S. Kelly,* for appellee.

OPINION BY HENDERSON, J., November 19, 1917:

The defendants maintain coke works known as "Elm Grove" in Fayette County, and in connection with that business conduct a store for the sale of general merchandise. The plaintiff keeps a store located near the defendants' plant. His allegation is that the defendants have interfered with his business and diminished the profits of his trade by requiring certain of their employees to deal at the defendants' store rather than at the plaintiff's, as a result of which the latter has sustained a loss of patronage and a consequent diminution of profits. The specific charge of the declaration is that "the defendants by and through their superintendent......maliciously intending to injure plaintiff and to injure his said business, and to drive him out of and destroy his said business, and to prevent him from continuing the profitable and lucrative business as aforesaid and to prevent him from acquiring any profit or gain therefrom, and to compel the tenants of the buildings of the defendants as aforesaid to buy from the store of the defendants,

have entered upon a course of conduct the object of which is to prevent the plaintiff from carrying on his said business with the employees and tenants of the defendants, by hindering, delaying, obstructing and interfering with the plaintiff in the conduct of his business as aforesaid." The means used were alleged to be threats and intimidations of the defendants' employees by making it known to such employees that in case they continued to patronize the store of the plaintiff and purchase from him such merchandise as was handled and sold in the store of the defendants they would be required to seek employment elsewhere and would no longer be employed by the defendants. It is not alleged that any of the defendants' employees were discharged for dealing with the plaintiff but that a few of the plaintiff's customers ceased to trade with him because of the direction of the defendants' superintendent that they purchase from the company's store while in the defendants' service. A verdict for $800 was found in favor of the plaintiff which was subsequently reduced to $180.93 with the consent of the plaintiff, that being the amount of profit which the plaintiff alleged he had lost. Exception was taken to the admission of evidence bearing on the loss of business but in the view which we take of the case it is unnecessary to consider that feature of it. An examination of the evidence fails to disclose any testimony supporting the averment of the statement of claim that the defendants maliciously intended to injure the plaintiff or to drive him out of, or destroy his business and to prevent him from continuing the same. What testimony was taken on the subject shows that the defendants' agent told some of the witnesses called that they should or must patronize the company's store if they desired to continue in the defendants' employment. That the plaintiff's business might not be as great if all the persons employed about the mine and coke works bought their supplies from defendants as if they patronized the plaintiff is evident but no one of them alleges that the

defendants were trying to injure the plaintiff's business. They desired the patronage of their employees at their own store.

The right of an employer to fix the period of the service of an employee in the absence of a contract creating an engagement for a determinate period and of the employee under like circumstances to terminate his service cannot be seriously questioned. It is an exercise of that personal freedom guaranteed by the Constitution. The employer has a right to prescribe the conditions on which he will engage a person offering to render service and an employee when engaged may at his pleasure quit the service with or without cause. In like manner the employer may dispense with the services of an employee without assigning a reason therefor. Where a contract exists, of course, the conduct of the parties would be regulated by the terms of such contract but where the engagement is for an indefinite period the employer may discharge without cause and the employee may quit the service without assigning any reason for so doing. There was no legal prohibition which forbade the defendants from making it a condition of employment that their employees should patronize the store which they had provided for the use of their workmen and there was no obligation on the part of the employee to accept the service under such conditions. The defendants were not prohibited from insisting that those who were employed at the coke works and mine should procure their supplies from the store but the workmen could decline to continue in the service of the company under such circumstances if they so chose. It cannot be doubted that the defendants could decline to employ a person who was unwilling to patronize their store while in their service, nor does it seem doubtful that they might tender to one in their service the option to remain on condition that he trade at their store. If the employer was unwilling to continue to employ one who would not procure his supplies from the employer's store, by what logic can

it be said that the service might not be terminated by the employer if the employee refused to comply or by the employee if he were unwilling to accept the terms. The principle is covered by the decision in Adair v. U. S., 208 U. S. 161, which involved the constitutionality of an act of congress forbidding a carrier engaged in interstate commerce or an agent or officer thereof from discharging an employee simply because of his membership in a labor organization. The same question was considered in Coppage v. Kansas, 236 U. S. 1, in which the constitutionality of an act of the legislature of Kansas was involved, making it unlawful for any individual or a member of any firm or agent, officer or employee of any company or corporation to coerce, require, demand or influence any person or persons to enter into any agreement either written or verbal, not to join or become or remain a member of any labor organization or association as a condition of such person or persons securing employment or continuing in the employment of such individual, firm or corporation. In each of these cases the conclusion was reached that the statutes in question were in violation of the Constitution of the United States. The same question was determined in this court in an opinion by President Judge RICE in Com. v. Clark, 14 Pa. Superior Ct. 435, on similar reasoning. If the defendants might contract for service or refuse to employ except on the terms they proposed on what principle can the plaintiff be injured in the absence of evidence of malice? They are not answerable in damages for the reasonable exercise of a right and their act does not become wrongful because it incidentally interferes with another person's trade. They have a right to the enjoyment of their own property and if in its lawful use an unavoidable loss occurs without malice on their part no right of action arises in favor of one who sustains such loss. The plaintiff had no such vested right in the patronage of any of the defendants' employees as that the withdrawal of the patronage of some of them in favor of

the company store at the direction of the defendants' superintendent would give an actionable cause of damage. As has already been observed the record does not disclose any evidence of malice and no question of negligence arises. The case is based on the effort of the superintendent to induce a few of the employees of the defendants to trade at the company store. We are of the opinion that the plaintiff failed to establish a case which will support a judgment.

The first and second assignments are sustained.

The judgment is reversed.